UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JOSHUA J. CALHOUN, ) | CASE NO. 5:12CV185 |
| ) | |
| Plaintiff, ) | JUDGE BENITA Y. PEARSON |
| ) | |
| v. ) | Magistrate Judge George J. Limbert |
| ) | |
| MICHAEL J. ASTRUE, ) | **REPORT AND RECOMMENDATION** |
| COMMISSIONER OF ) | **OF MAGISTRATE JUDGE** |
| SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

Joshua J. Calhoun ("Plaintiff") seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying his application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). ECF Dkt. #1. For the following reasons, the undersigned recommends that the Court AFFIRM the Commissioner's decision and dismiss Plaintiff's complaint with prejudice:

I. **PROCEDURAL AND FACTUAL HISTORY**

On April 20, 2009, Plaintiff applied for SSI and DIB, alleging disability beginning June 20, 2008. Tr. at 140-144. Plaintiff's date last insured is December 31, 2013. Tr. at 13. The SSA denied Plaintiff's application initially and on reconsideration. Tr. at 91-97, 104-117. On March 15, 2010, the SSA acknowledged Plaintiff's request for an administrative hearing. Tr. at 32-33. On December 3, 2010, an ALJ conducted an administrative hearing where Plaintiff was represented by counsel. Tr. at 34-86. At the hearing, the ALJ accepted the testimony of Plaintiff and Bruce Holderead, a vocational expert ("VE"). On December 9, 2010, the ALJ issued a Decision denying benefits. Tr. at 8-23. Plaintiff filed a request for review, which was denied by the Appeals Council on November 23, 2011. Tr. at 1-3.

On January 25, 2012, Plaintiff filed the instant suit seeking review of the Decision. ECF Dkt. #1. On October 18, 2012, with leave of the Court, Plaintiff filed a brief on the merits. ECF Dkt. #15. On December 3, 2012, Defendant filed a brief on the merits. ECF Dkt. #16. Plaintiff filed his reply brief on December 17, 2012. ECF Dkt. #17.

## II. **SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION**

The ALJ determined that Plaintiff suffered from Pachyonychia Congenita ("PC")[1], which qualified as a severe impairment under 20 C.F.R. §§404.1520(c) and 416.920(c). Tr. at 13. The ALJ further determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, 20 C.F.R. §§404.1520(d), 404.1525, 404.1526, 416.920(d), and 416.926 ("Listings"). Tr. at 14.

The ALJ concluded that Plaintiff has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), except that Plaintiff must have occasional position changes and must not be involved in work involving ladders, ropes, scaffolds, climbing or requirements whereby foot controls or maneuvers would be required. Tr. at 14. The ALJ ultimately concluded that although Plaintiff could not perform his past work, he could perform the representative occupations of charge account clerk, order clerk/food and beverage, addressor, and call-out operator, and, therefore, Plaintiff had not been under a disability as defined in the SSA and was not entitled to benefits. Tr. at 18.

## III. **STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS**

An ALJ must proceed through the required sequential steps for evaluating entitlement to benefits. These steps are:

---

[1] Pachyonychia congenita is a rare genodermatosis caused by mutations in one of four keratin genes. It is characterized by dystrophic, thickened nails and painful palmoplantar keratoderma. Plantar keratoderma occurs in 91-96% of patients. It typically develops in early childhood with the start of prolonged walking and weight bearing. The keratoderma is generally worse on the soles than the palms. It most commonly manifests as persistent large callouses on weight bearing surfaces and may be preceded or accompanied by blistering. Plantar pain appears to be the most important feature to negatively impact quality of life among people with pachyonychia congenita and may be severe enough to result in limitation of activities or require medications to manage it. See http://emedicine.medscape.com/article/1106169-clinical.

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937, citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (citation omitted). An ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of

the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (citations omitted). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997).

## V.     SUMMARY OF TESTIMONY

On the date of the hearing, Plaintiff was twenty-eight years of age and married with four children under the age of nine. Tr. 38-40. Plaintiff testified that he is a full-time college student, with classes five days per week. Tr. at 42-43. He did not attend class approximately three days a month. Tr. at 62. Plaintiff further testified that he could drive without limitation, although, at the time of the hearing, he had lost his license due to a child support issue. Tr. 40-41.

According to his testimony, Plaintiff drops objects because his hands, and any part of his skin, are extremely sensitive. Tr. at 63. There are areas on his buttocks that become inflamed and very painful. Tr. at 63. As a consequence, there are some days when he must lie on his stomach all day. Tr. at 64. This problem began approximately six years prior to the hearing. Tr. at 65. The flares last a day or two, and occur anywhere from once a week to once every three weeks. Tr. at 66.

At least two or three times a week when Plaintiff was working[2], he would have to crawl out of his car and his wife would have to assist him to get into the house. Tr. at 64. He testified that he could not work eight hours a day, "day in and day out," because the pain worsens whether he is sitting or on his feet. Tr. at 66-67. He further testified than any pressure points or rubbing areas flare up and blister. Tr. at 67.

Plaintiff does not seek regular treatment for his PC, because his condition is so rare that he typically knows more about it than most physicians. Tr. at 81. The last physician he remembered seeing was at the Cleveland Clinic. He testified that, when he sees a physician, he focuses on his feet and fingernails. Tr. at 82. According to his testimony at the hearing, he went to an emergency

---

[2]Plaintiff's previous work included employment as a loader/operator, construction worker, packer, and sandwich maker. Plaintiff's past work was characterized by the VE as unskilled and semi-skilled work performed at medium and heavy exertional levels. Tr. at 73.

room to treat a flare up on his buttocks the first time that they appeared, but the only treatment that was offered was to lance the blisters. There are no medical notes from this emergency room visit in the record. Plaintiff testified that it is frustrating to seek treatment because there is essentially no treatment for PC. Tr. at 83. Plaintiff further testified that his pain level goes up to a seven or eight on a scale of one to ten. Tr. at 85. According to his testimony, the pain would continue to increase, however Plaintiff stops exerting himself when he reaches a threshold of seven or eight on a scale of one to ten.

## VI.     **SUMMARY OF MEDICAL EVIDENCE**

Because Plaintiff does not receive regular treatment for PC, the medical evidence in the record is limited. The medical evidence in the record also contradicts Plaintiff's testimony at the hearing regarding the limitations caused by his PC. On June 10, 2009, Paul T. Scheatzle, D.O., a consultative examiner, noted that Plaintiff had a history of PC that resulted in foot pain as well as callusing and blistering of his hands and feet, thickening of his fingernails and toenails, calluses within his mouth, and poor dentition. Tr. at 233. Dr. Scheatzle identified Tylenol as Plaintiff's only medication.

However, Dr. Scheatzle observed Plaintiff to have normal motor functioning in his legs, Tr. at 229, and normal/near normal ranges of motion in his hips, legs, and ankles. Tr. at 232. Dr. Scheatzle noted that, although Plaintiff complained of aching hands and lower legs/feet, Tr. at 233, he exhibited "[n]o pain behaviors." Tr. at 234. Moreover, Plaintiff did not have an antalgic gait, showed no loss of balance, and experienced only mild tenderness to palpation on the casting of his feet. Tr. at 234. He did not need an assistive device to walk, and he ascended/descended from the examination table without difficulty. Tr. at 234.

Additionally, despite noting Plaintiff's abnormal nails, calloused feet, and symptomatic mouth, Dr. Scheatzle found no joint deformities, four out of five muscle strength, normal muscle tone, and normal grasp, manipulation, pinch, and fine coordination. Tr. at 234. As such, he determined that Plaintiff could sit without limitation and stand occasionally with position changes allowed every thirty minutes. Tr. at 234. Furthermore, Dr. Scheatzle observed that Plaintiff was able to lift up to one hundred pounds and maintain a normal ability to speak, travel, handle objects,

understand, remember, concentrate, interact, and adapt. Tr. at 234-35. On June 29, 2009, William Bolz, M.D., a state agency consulting physician, found Plaintiff capable of performing a modified range of medium work, with standing and walking thirty minute per hour for a total of four hours in an eight-hour shift. Tr. at 237-238.

On August 15, 2009, C. David Hansen, M.D., of the Pachyonychia Congenita Project, had a telephone consultation with Plaintiff. As a result of their conversation, Dr. Hansen noted Plaintiff's subjective complaints related to his PC and expressed his intent to send a "To Whom It May Concern" letter regarding Plaintiff's PC to "help with [Plaintiff's] vocational training [and in] looking for a better job." Tr. at 269-270. On August 21, 2009, Dr. Hansen wrote the letter to Plaintiff regarding his PC. Tr. at 268.

On August 26, 2009, Plaintiff presented to Minerva Medical Center for an initial visit. Tr. at 289-90. On examination, he appeared neurologically intact. Tr. at 289. Subsequently, on September 11, 2009, Plaintiff was referred to David J. Hamrock, M.D., at the Cleveland Clinic, for an opinion regarding his PC. Tr. at 285-87. Plaintiff explained that "[t]he most bothersome thing to him is hyperkeratosis of his feet, which has not previously been treated." Tr. at 285. Specifically, he noted that he "sometimes develops blisters on his feet after a lot of manual work." Tr. at 285. On examination, however, Plaintiff appeared to be in no acute distress, but had a white coating on his tongue, plaques on the weight bearing areas of his feet, and deformed nails. Tr. at 285. Dr. Hamrock prescribed Soriatane 25 mg. and a 40% Urea cream. Tr. at 286. At the appointment, Plaintiff expressed no pain and no difficulty performing or completing routine daily living activities to Patti Leonello Hoffman, LPN. Tr. at 287. Moreover, it does not appear that Plaintiff sought treatment for the flare ups on his buttocks.

On October 15, 2009, Dr. Hansen wrote a second letter on Plaintiff's behalf regarding the limiting effects of his PC. Tr. at 275, 278. In the letter, he conceded that he never examined Plaintiff in person. Tr. at 275, 278. He also opined that Plaintiff "should seek employment training that would allow him to work in a clerical position" Tr. at 275.

On October 23, 2009, Plaintiff presented to CNP Beth Daniels at Minerva Medical Center for a followup. Tr. at 288. Plaintiff reported that the prescribed ointments or creams for his feet did not really help him and if anything he felt that it made him worse.

Over a year later, on November 18, 2010, Gregory Spohn, M.D., Plaintiff's pediatrician from 1992 to 1998 wrote a "To Whom It May Concern" letter wherein he reported that he had not seen Plaintiff since 1998 – twelve years earlier. Tr. at 341. Dr. Spohn explained that he treated Plaintiff for seasonal allergies with occasional infections, and that he informed Plaintiff that he would "need an evaluation by an adult physician for disabilities." Tr. at 341. Several days later, Plaintiff submitted photographs of various parts of his body allegedly affected by PC to the ALJ. Tr. at 371-376.

W. Jerry McCloud, MD, completed a Physical Residual Functional Capacity Assessment at the request of the Bureau of Disability Determination on December 25, 2009. Tr. at 308-315. He concluded that Plaintiff could occasionally lift and/or carry ten pounds; frequently lift and/or carry ten pounds; stand and/or walk at least two hours in an eight-hour workday; sit for a total of approximately six hours in an eight-hour workday; and described Plaintiff's ability to push and/or pull as limited in the lower extremities. Tr. at 309. Dr. McCloud further opined that Plaintiff could never use a ladder, rope, or scaffolds. Tr. at 310.

## VII. VOCATIONAL TRAINING

Vocational training evidence is likewise at odds with Plaintiff's testimony at the hearing. On August 19, 2009, Plaintiff presented to Career Assessment Systems, Inc. ("CAS"), for a Comprehensive Vocational Evaluation Report. Tr. at 248-65. Plaintiff described his present health as "good," and noted "that his feet do not bother him if he is sitting." Tr. at 249. Plaintiff alleged difficulty when standing for very long on certain surfaces or in specific footwear, but explained that "if he does not have to wear boots, he can stand longer . . ." Tr. at 249.

According to the assessment, Plaintiff needed required assistance with persistence and productivity due to his PC, but no assistance adhering to standards, following directions, or producing quality work. Tr. at 253. Moreover, the CAS staff described him as functioning at "an

-7-

overall average level suggesting a relative ability to function independently in most competitive employment environments at this time." Tr. at 253.

As for Plaintiff's physical capabilities, which were classified as "never, occasional, frequent, constant, and not an issue," the CAS staff concluded that Plaintiff could climb constantly and had no issue with balancing, stooping, kneeling, crouching, crawling, reaching, handling, and fingering. Tr. at 254. Similarly, Plaintiff had no environmental limitations except that he was only capable of frequent or constant exposure to weather, wetness, humidity, and extreme heat. Tr. at 255. Furthermore, the CAS staff determined that Plaintiff could perform very heavy work. Tr. at 258. The CAS staff noted that Plaintiff's potential barriers to employment were: accommodating to environmental changes while maintaining productivity; task completion; and performing activities at an acceptable rate. Tr. at 261. Nonetheless, the staff recommended only the opportunity for postural changes and orthopedic shoes as potential accommodations or modifications for Plaintiff. Tr. at 259-261. Ultimately, the CAS staff deemed Plaintiff "a viable candidate for competitive employment at this time." Tr. at 259.

Subsequently, on October 22, 2009, Mary E. Schwartz, Director of the Pachyonychia Congenita Clinic, wrote a letter on Plaintiff's behalf regarding his PC. Tr. at 277. She explained that "training for work that does not require standing or walking other than for very short distances or times will be extremely beneficial for [Plaintiff] and that with that type of training he can be productively employed." Tr. at 277.

## VIII. ANALYSIS

Plaintiff contends that the ALJ improperly assessed his credibility. The ALJ provided the following analysis in support of his credibility determination:

> The undersigned finds that the allegations concerning the nature and persistence of the claimant's symptoms are not fully credible. Repeated physical examinations reveal that the claimant has good use of his arms and legs and moves in a satisfactory manner. The claimant is neurologically intact. The objective evidence fails to document an impairment or combination of impairments which would be expected to result in disabling pain. The claimant has not required hospitalization due to pain.
>
> In arriving at a decision, the undersigned has considered the medical evidence, medical opinions, the claimant's subjective allegations, and the combined effect of all impairments. While the claimant undoubtedly experienced symptoms associated

-8-

> with significant limitations, he responded well to treatments, medications, and showed a fairly good socialization with friends and family, varied daily activities, and even operates a motor vehicle. He also handles his own finances. Therefore, the residual functional capacity set forth above is an accurate reflection of the claimant's capacity.

Tr. at 17.

The social security regulations establish a two-step process for evaluating pain. *See* 20 C.F.R. § 416.929. In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain arising from that condition, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *See id.; Stanley v. Secretary of Health and Human Services*, 39 F.3d 115, 117 (6th Cir. 1994); *Felisky v. Bowen*, 35 F.3d 1027, 1038-1039 (6th Cir. 1994); *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847, 853 (6th Cir. 1986). Therefore, the ALJ must first consider whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the individual's pain or other symptoms. *See id.* Secondly, after an underlying physical or mental impairment is found to exist that could reasonably be expected to produce the claimant's pain or symptoms, the ALJ then determines the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities. *See id.*

When a disability determination that would be fully favorable to the plaintiff cannot be made solely on the basis of the objective medical evidence, as Plaintiff appears to concede here, an ALJ must analyze the credibility of the plaintiff, considering the plaintiff's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. *See* SSR 96-7p, 61 Fed. Reg. 34483, 34484-34485 (1990). These factors include: the claimant's daily activities; the location, duration, frequency and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any pain medication; any treatment, other than medication, that the claimant receives or has received to relieve the pain; and the opinions and statements of the claimant's doctors. *Felisky*, 35 F.3d at 1039-40. Since the ALJ has the opportunity to observe the claimant in person, a court reviewing

the ALJ's conclusion about the claimant's credibility as to pain should accord great deference to that determination. *See Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1234 (6th Cir.1993). Nevertheless, an ALJ's assessment of a claimant's credibility as to pain must be supported by substantial evidence. *Walters v. Commissioner of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

At the hearing, Plaintiff testified that he experiences disabling pain, whether standing or sitting. However, the majority of evidence in the record, including Plaintiff's own statements, as well as the opinions of examining and consulting physicians, supports the ALJ's finding that Plaintiff is capable of sedentary work with additional limitations,. For instance, Plaintiff told the State agency on May 1, 2009, almost a year after his alleged onset of disability date, that "he was able to work, [he] just could not work where he stood all day." Tr. at 173. Dr. Scheatzle, the consultative examiner, along with Drs. Bolz and McCloud, the state agency physicians, all concluded that Plaintiff retained the residual functional capacity to work. Dr. Hansen, of the Pachyonychia Congenita Project, stated that Plaintiff "should seek employment training that would allow him to work in a clerical position." Tr. at 278. Ms. Schwartz, the Project's Director, also "believe[d] that training for work that does not require standing or walking other than for very short distances or times will be extremely beneficial for [Plaintiff] and that with that type of training he can be productively employed." Tr. at 277. Additionally, the CAS staff deemed Plaintiff "a viable candidate for competitive employment at this time" Tr. at 259.

Plaintiff's activities of daily living supported the foregoing assessments that he could perform full-time work. At the administrative hearing, Plaintiff admitted that he attended college full-time, Tr. at 42-43, and that a typical day of school lasted approximately four to five hours. Tr. at 62-63. He also acknowledged being married, with four children under the age of nine. Tr. at 39-40. At his appointment at the Cleveland Clinic, Plaintiff did not report any limitations on his daily activities due to his PC. Moreover, Plaintiff sought no treatment for the flare ups on his buttocks. Tr. at 285-287.

Finally, Plaintiff has provided conflicting testimony regarding the effect of his limitations. Prior to the administrative hearing, Plaintiff reported that one of his previous employers, D&K Supply fired him for a "reason [that] was not connected to . . .disability." Tr. at 164. At the hearing Plaintiff attributed the loss of that job to limitations caused by his PC. To the extent that Plaintiff contradicted earlier statements regarding the reason for his termination from D&K Supply, this also supports the ALJ's decision not to credit Plaintiff's testimony at the hearing.

In summary, the record contains medical and vocation evidence that does not support Plaintiff's allegations of disabling pain. In addition, the record contains conflicting testimony from Plaintiff regarding the severity of his disease and the limitations caused by his disease. As a consequence, the undersigned recommends that the Court find that the ALJ did not err in discrediting Plaintiff's testimony at the hearing.

## IX.  CONCLUSION

For the foregoing reasons, the undersigned recommends that the Court AFFIRM the Commissioner's decision and dismiss Plaintiff's complaint with prejudice:


DATE: December 28, 2012            */s/George J. Limbert*
                                   GEORGE J. LIMBERT
                                   UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).